Clark D. Brooks v. Commissioner.
Brooks v. Commissioner
Docket No. 28244.
United States Tax Court
1951 Tax Ct. Memo LEXIS 41; 10 T.C.M. (CCH) 1094; T.C.M. (RIA) 51335; November 19, 1951
Arthur L. Evely, Esq., for the petitioner. John L. King, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Respondent determined a deficiency of $5,193.69 in petitioner's income tax for the year 1946. All of this amount is in controversy, excepting $1,154.95. Petitioner alleges error on the part of respondent in determining that certain payments made to Harper Hospital aggregating $10,585, and a payment of $50 made to Wayne County Medical Society constituted contributions under section 23 (o) of the Internal Revenue Code, rather than ordinary and necessary business expenses under section 23 (a) of the Code. Findings of Fact Some of the facts have been stipulated and *42 as stipulated are found as facts. Petitioner is an individual residing in Detroit, Michigan. His income tax return for 1946 was filed on the cash basis with the collector for the district of Michigan. Petitioner has been engaged in the practice of surgery and medicine for a long time. For the past 24 or 25 years he has occupied offices consisting of about 24 rooms, including administrative offices, examining and consulting rooms, laboratories, and an X-ray department directly across the street from Harper Hospital. He employs 17 or 18 persons including nurses and surgeons. Harper Hospital is one of the largest hospitals in Detroit. Petitioner has been performing operations at Harper since 1907 and has held numerous positions there including Intern, Extern, Junior Surgeon, Surgeon, Chief of Surgery Department, and Senior Surgeon. A senior surgeon, which petitioner was in 1946, is not employed by the hospital but enjoys certain privileges there by virtue of his position, one of which is the use of his own operating room. A member of the hospital staff does not pay for the privilege of becoming a member or for the use of the operating rooms. For almost 30 years prior to 1946 *43 petitioner and his staff had an average of between 50 and 100 patients per day at Harper Hospital. All major operations on such patients were performed at the hospital and for the 30-year period an average of seven or eight such operations per day were performed. Approximately one-half of petitioner's surgery cases are referred to him by other physicians because of his excellent reputation. Other cases come to him at the request of patients or because petitioner has operated on other members of the patient's family. Any doctor not a member of the Harper staff can practice there in cases of emergency, but ordinarily, due to crowded conditions, a doctor must be a staff member in order to place patients there. Over the years petitioner, because of solicitation by doctors of his acquaintance, has made contributions to hospitals other than Harper. These contributions have not been as large as his payments to Harper Hospital. Petitioner has also, over the years, made donations for various funds at Harper. He has at times helped young interns with their expenses and assisted in establishing a blood bank at Harper Hospital to make blood immediately available to all patients. On February 19, 1946, petitioner *44 made a payment to Harper Hospital of $585 for the purchase of an oxygen tent. This was done because the hospital was in need of additional oxygen tents and petitioner felt that since the hospital operated each year at a deficit it did not have the means to purchase the tent or other needed equipment. The tent was not for the particular use of petitioner's patients and was an addition to the general equipment of Harper Hospital. In other years petitioner has purchased seven or eight oxygen tents for the hospital. On December 30, 1946, petitioner made a payment of $10,000 to Harper Hospital. In that year there was a scarcity of needed equipment at the hospital and the payment was made to help furnish funds for the purchase of such equipment. Petitioner did not specify how the $10,000 should be expended. He was not billed by Harper Hospital for the amount of $10,000 or for the $585 for the oxygen tent. No publicity attended the payments, nor was it shown for what the $10,000 was expended by the hospital. The payment for the oxygen tent was made by check payable to Harper Hospital. On the reverse of the check appears the endorsement of Harper Hospital, followed by the words: "Donation *45 Account". The $10,000 payment was also made by check, on the lower left hand corner of which appears the word, "Gift". Both checks were prepared by petitioner's secretary. Petitioner did not know the word, "Gift", was on the check until it was later called to his attention. The $10,000 check was endorsed: "Detroit Bank, Harper Hospital Donation Account". During 1946 petitioner made a payment of $50 to the Wayne County Medical Society of which he had been Chairman of the surgical section. This Society has between 2,500 and 3,000 members. Its purpose is for the interchange and dissemination of medical information and for the promotion and betterment of the practice of medicine. This payment was made by check, endorsed by the National Physicians Committee, one of the Committees of the Society. It was made as the result of a special request for certain special purposes, not otherwise identified, of the Physicians Committee and was not for payment of dues. It does not appear for what purposes the money was used. Petitioner deducted $50the as an ordinary and necessary professional expense in 1946. The item bore the additional notation, "Contribution to Professional Associations". *46 Payments of $2,800, $6,950, and $9,150 made by petitioner to Harper Hospital in 1943, 1944, and 1945, respectively, were designated on his income tax returns for those years as donations or contributions. The $6,950 payment in 1944, though designated a contribution, was deducted as a business expense in determining net income from profession. The amount of $9,150 in 1945 included one-half ownership of a building owned jointly with petitioner's wife, the half interest being given a value of $8,750. The payments made to the hospital in 1946 were deducted as ordinary and necessary expenses of carrying on petitioner's profession. The listing of the $10,000 item bears the additional notation, "Gratuity in recognition of services and assistance". The data and information for petitioner's tax returns for the years mentioned were assembled by his secretary and the returns themselves were prepared by his accountant. Both Harper Hospital and the Wayne County Medical Society are organizations of the kind described in section 23 (o) of the Internal Revenue Code. Opinion The question for decision is narrow. Were the payments made by petitioner "ordinary and necessary *47 expenses paid or incurred during the taxable year in carrying on" petitioner's profession within the meaning of section 23 (a) (1) and therefore deductible in full; or were the payments "contributions or gifts * * * to or for the use of" an organization of the character described in section 23 (o) and therefore subject to the 15 per centum limitation on deductibility provided in that section? [Italics supplied.] At first glance the answer seems obvious. It is stipulated that the organizations to which the payments were made are organizations of the kind described in section 23 (o). And that the payments were "contributions or gifts * * * to or for the use of" those organizations is hardly open to question. Nevertheless, counsel for petitioner earnestly contend that the payments were made either with the expectation of financial return or with reasonable expectation of obtaining a business benefit therefrom and, therefore, that they should be treated as ordinary and necessary business expenses. In support of this argument we are cited to but one reported case, Missouri Pacific Railroad Co., 22 B.T.A. 267. We have carefully studied all of the evidence of record in *48 the light of these contentions, but are unable to come to the conclusions urged by petitioner. On the contrary, we conclude that the payments were gifts or contributions made by a highly respected physician to the hospital with which he had long been associated, motivated, not by expectation of financial gain or professional advantage, but the humanitarian and professional generosity of the highest order. Petitioner furnished the money for the oxygen tent because he felt the hospital needed more equipment of that kind and because he feared that some patient, not necessarily one of his own, might suffer from its lack. He gave the hospital $10,000 with no strings attached because he knew the institution needed funds for the improvement of its facilities. Petitioner testified that the purchase of the oxygen tent would constitute a benefit to his practice because it would give equipment to the hospital which he might use in an emergency. He also testified he thought the $10,000 payment would be of benefit to his practice in that "anything that would improve the hospital so that we can safely take our patients in and our friends and our wives there adds to the benefit of my own practice *49 and the practice of everyone in the hospital and to all medicine". We nevertheless feel that such testimony, general as it is, and elicited as it was under the pointed and purposeful questioning of counsel, is not enough to translate the payments, the primary motive of which we believe was generosity, into business expenses. Petitioner bought nothing for himself at the hospital with the payments. At most, he purchased what he called "good will". No business advantage accrued to him through any publicity attending the payments, however, for there was none. The payments simply followed a pattern of generous acts in which petitioner has indulged over the years. Any benefit to his practice that might have resulted (and we are unable to find any definite benefit) was incidental and certainly not commensurate with the amount of the payments. The question is essentially factual and the reported case relied on by petitioner is readily distinguishable. Missouri Pacific Railroad Co., supra, involved payments made to a hospital for the purchase of equipment and facilities by petitioner corporation which was obligated to provide hospital care for injured employees. Had the hospital *50 not had such facilities available it would have been necessary for petitioner to provide them at its own expense. The principle of that case is not applicable here. The payment there was made purely because of self interest. Turning to the $50 paid to the Wayne County Medical Society, we also are unable to find this was a business expense. While the Society is undeniably a professional society the payment of dues to which might very well be a necessary and ordinary business expense for the purpose of maintaining membership, there is no showing here as to the purpose or necessity of the payment in question. It was made as the result of a special request for funds. That is all we know. Its expenditure may have been in pursuit of some aim wholly unrelated to the purposes of the Society. Petitioner has not sustained his burden of establishing the nature of the payment and we accept respondent's determination that it was a contribution to the Society. Decision will be entered for the Respondent.